Magomed Gusein Gasanov, Esq. (CA SBN: 368130)
137 S Crescent Dr, Apt. 3
Beverly Hills, CA 90212
gasanov.mgz@gmail.com
213-642-9978

*Attorney for Petitioner*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| DOK ZAINUTDINOV,<br>A 220-561-874,<br>Petitioner,<br><br>v.<br><br>ERNESTO SANTACRUZ, JR., Field Office Director, Los Angeles Field Office, U.S. Immigration and Customs Enforcement; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States, WARDEN, Adelanto ICE Processing Center;<br><br>Respondents. | CASE No.<br><br>**PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 AND *Zadvydas v. Davis*, 533 U.S. 678 (2001)** |

## INTRODUCTION

1. Petitioner Dok Zainutdinov is a citizen of the Russian Federation who has been in the physical custody of U.S. Immigration and Customs Enforcement ("ICE") continuously since March 25, 2026 — now 180 days — under a final order of

removal that Respondents cannot execute. Declaration of Magomed Gusein Gasanov ("Gasanov Decl.") ¶¶ 13, 17, filed concurrently herewith.

2. This is not a case in which the Government's removal efforts are ongoing and have simply not yet borne fruit. On August 14, 2026, a consular officer of the Russian Federation came to the detention facility where Petitioner was then held, reviewed a group of eight Russian nationals, singled out Petitioner and one other detainee, and refused them in a single word: "Denied." The next day, August 15, 2026, ICE removed the other six members of that group to Russia. Petitioner's own removal, scheduled for that same date, did not occur. Respondents' own officers gave the reason: the travel documents did not exist. Gasanov Decl. ¶¶ 23–24.

3. In the five weeks since, nothing has changed. No travel document has issued. No new removal date has been set. The order of removal designates no alternate country, and Respondents have identified no third country willing to receive Petitioner. Gasanov Decl. ¶¶ 8, 14, 26; Ex. B.

4. Petitioner asks only what *Zadvydas v. Davis*, 533 U.S. 678 (2001), entitles him to ask: that when the Government cannot remove him, it may not hold him indefinitely while waiting on a foreign sovereign that has already said no. He respectfully requests that this Court issue an order to show cause under 28 U.S.C. § 2243 and, thereafter, grant the writ and order his immediate release under reasonable conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.

## I. JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 2241, 28 U.S.C. § 1331, Article I, Section 9, Clause 2 of the United States Constitution, and the Due Process Clause of the Fifth Amendment. Petitioner is "in custody under or by color of the authority of the United States" and "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (c)(3). Declaratory relief is available under 28 U.S.C. §§ 2201–2202.

6. The Supreme Court and the Ninth Circuit have repeatedly entertained habeas challenges to post-removal-order detention on the merits. *Zadvydas*, 533 U.S. at 687–88; *Clark v. Martinez*, 543 U.S. 371, 377–78 (2005); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075–76 (9th Cir. 2006).

7. Venue is proper in this District. Petitioner is confined at the Adelanto ICE Processing Center in Adelanto, San Bernardino County, California, which lies within the Central District of California, and his immediate physical custodian is present here. *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35, 442–43 (2004); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494–95 (1973); 28 U.S.C. § 1391(e)(1); Gasanov Decl. ¶ 9; Ex. C. Assignment to the Eastern Division is proper under Local Rule 83-1.1.1 because San Bernardino County lies within that Division.

## II. PARTIES

8. Petitioner Dok Zainutdinov is a citizen of Russia, detained at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301. His Alien Registration Number is A 220-561-874. Respondent Warden of the Adelanto ICE Processing Center is Petitioner's immediate physical custodian, named in his or her official capacity.

9. Respondents Ernesto Santacruz, Jr. (Field Office Director, Los Angeles Field Office, ICE), David Venturella (Acting Director, ICE), Markwayne Mullin (Secretary, U.S. Department of Homeland Security), and Todd Blanche (Attorney General of the United States) are named in their official capacities to the extent necessary to effectuate Petitioner's release and the prospective relief requested.

## III. EXHAUSTION

10. No statute requires administrative exhaustion before a petition under 28 U.S.C. § 2241. The exhaustion requirement in this setting is prudential, not jurisdictional, and may be waived. *Laing v. Ashcroft*, 370 F.3d 994, 997–98 (9th Cir.

2004); *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006).

**IV. FACTUAL ALLEGATIONS**

11. The allegations in this Part are supported by the concurrently filed Declaration of Magomed Gusein Gasanov and by Exhibits A through C attached thereto.

12. On or about September 5, 2021, Petitioner presented himself for inspection and applied for admission at the San Ysidro Port of Entry in California, expressed a fear of returning to Russia, and was found by a DHS asylum officer to have established a credible fear of persecution or torture. On or about October 26, 2021, DHS issued him a Notice to Appear (Form I-862) charging him as removable under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant not in possession of a valid entry document. His removal proceedings were conducted before the San Diego Immigration Court. Gasanov Decl. ¶¶ 6, 16; Ex. A.

13. On February 12, 2026, Immigration Judge Meghan Heesch entered an order removing Petitioner to Russia *in absentia* and deeming his applications for relief and protection abandoned. The order designates Russia and no other country; the space provided for an alternative country of removal is blank. The order became administratively final upon entry, 8 C.F.R. § 1241.1(e), the removal period under 8 U.S.C. § 1231(a)(1)(B)(i) commenced on that date and has since expired, and Petitioner's detention has been governed by 8 U.S.C. § 1231(a)(6) ever since. Petitioner is aware of no stay of removal and of no legal impediment of any kind to his removal; the sole obstacle is the absence of a travel document from the Russian Federation. Gasanov Decl. ¶¶ 7–8, 11–12, 14; Ex. B.

14. ICE took Petitioner into physical custody on March 25, 2026 and he has remained in continuous ICE custody since that date. At booking ICE classified him

"High"; it later reduced that classification to "Low." He has no criminal convictions and no pending criminal charges in the United States or elsewhere, and he has received no disciplinary write-up, infraction, or sanction at any point during his detention. Gasanov Decl. ¶¶ 13, 17–19.

15. Petitioner was detained at the Adelanto ICE Processing Center from March 25, 2026 until August 8, 2026. On August 7, 2026 he was taken out of the facility and hospitalized. On the morning of August 8, 2026, as he was being returned from the hospital, an ICE officer asked the treating physician whether he was medically able to fly and was told that he was; Petitioner was then placed aboard an aircraft and flown, as he recalls, from El Paso, Texas, to Dallas, Texas, and then to Louisiana. He was not removed from the United States. Over approximately two weeks beginning on or about August 8, 2026, he was moved through approximately five different detention facilities, restrained in handcuffs, chains, and leg shackles, on transports lasting as long as ten to fifteen hours. Gasanov Decl. ¶¶ 20–22.

16. On August 14, 2026, a representative of the Russian consulate who identified himself as Anton Viktorovich Gorelov came to the detention facility in Louisiana where Petitioner was then held. Eight Russian citizens, including Petitioner, were presented to that officer. Mr. Gorelov pointed specifically at Petitioner and at another Russian detainee, Sergey Vasenin, and stated to the ICE officers present a single word: "Denied." Of the eight men presented, only Petitioner and Mr. Vasenin were refused. To the best of Petitioner's knowledge and belief, the Russian Federation has never issued a travel document authorizing his removal. Gasanov Decl. ¶¶ 14, 23.

17. Petitioner's removal was scheduled to take place on August 15, 2026. On that date, ICE officers told Petitioner and Mr. Vasenin that they could not be removed because the necessary travel documents did not exist. The other six Russian nationals in the group were removed on or about that date. Petitioner's removal did

not fail for any reason attributable to him; he did nothing to prevent, delay, obstruct, or frustrate it. Gasanov Decl. ¶¶ 24, 28.

18. Mr. Vasenin, who was refused together with Petitioner and who on information and belief remains in ICE custody, and the ICE officers present on August 14 and 15, 2026, can corroborate those events. Petitioner can identify the remaining members of the group, and counsel will provide their identities to the Court or to Respondents on request; their names are omitted from this filing because, on information and belief, they have been removed to the Russian Federation. Gasanov Decl. ¶ 25.

19. Since August 15, 2026, no officer or employee of ICE has informed Petitioner that a travel document has been issued for him, that one is expected, or that a new removal date has been set. On September 11, 2026, ICE transferred Petitioner back to the Adelanto ICE Processing Center, where he remains detained. On information and belief, Respondents have taken no step since August 15, 2026 that has produced, or is reasonably likely to produce, a travel document from the Russian Federation, and Respondents have identified no third country willing to accept him. Gasanov Decl. ¶¶ 26–27, 30; Ex. C.

20. Since March 25, 2026, Petitioner has cooperated fully with ICE. He has never resisted an ICE officer or a transport, never resisted or attempted to evade the removal process, and never attempted to escape, abscond, or conceal himself, and he has complied with every instruction and request made of him, including every request made in connection with efforts to obtain a travel document. He remains willing to sign any form, complete any application, and attend any interview that ICE or the Russian consulate may require. He boarded the aircraft on August 8, 2026, appeared before the consular officer on August 14, 2026, and was present and available for removal on August 15, 2026. Gasanov Decl. ¶ 28.

21. Petitioner has a wife and two adopted children in the United States. His wife has serious health conditions and depends on him for support and assistance. If released, Petitioner will reside with his wife at a known address, report to ICE as often and in whatever manner the Court or ICE directs, keep ICE informed of his address at all times, comply with any condition of supervision the Court imposes including electronic monitoring, and present himself for removal immediately if a travel document is ever issued. He has no incentive to abscond: his family is here, and he does not contest his removal. Gasanov Decl. ¶ 29.

## V. CLAIMS FOR RELIEF

### CLAIM ONE — Continued Detention Exceeds the Authority Conferred by 8 U.S.C. § 1231(a)(6)

22. Petitioner realleges and incorporates by reference paragraphs 1 through 21.

23. Section 1231(a)(6) does not authorize indefinite detention. Read in light of the Constitution's demands, it "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689.

24. More than six months have elapsed since the removal period commenced, and Petitioner has good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. Respondents' continued detention of Petitioner is therefore not authorized by statute, and the writ should issue.

### CLAIM TWO — Continued Detention Violates the Due Process Clause of the Fifth Amendment

25. Petitioner realleges and incorporates by reference paragraphs 1 through 24.

26. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty" protected by the

Due Process Clause. *Zadvydas*, 533 U.S. at 690. Civil detention satisfies due process only where it is nonpunitive and bears "a reasonable relation to the purpose for which the individual [was] committed." *Id.* (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)); see also *Foucha v. Louisiana*, 504 U.S. 71, 79–80 (1992); *United States v. Salerno*, 481 U.S. 739, 746 (1987).

27. Because Petitioner cannot be removed, his detention no longer bears any reasonable relation to the purpose of effectuating removal. It has become detention for its own sake. Petitioner presents no danger to the community and no meaningful risk of flight: Respondents themselves reduced his custody classification from "High" to "Low," he has no criminal record and no disciplinary record, and his family ties are in the United States. Gasanov Decl. ¶¶ 18–19, 29.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. LEGAL FRAMEWORK

In *Zadvydas v. Davis*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention." 533 U.S. at 689. Construing the statute to avoid the "serious constitutional problem" that indefinite civil detention would present, the Court read into it an implicit limitation: detention is authorized only for "a period reasonably necessary to bring about that alien's removal from the United States." *Id.*

The Court supplied an administrable framework. "[F]or the sake of uniform administration in the federal courts, six months is the appropriate period" that is presumptively reasonable. *Id.* at 701. "After this 6-month period, once an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must furnish evidence sufficient to rebut that showing." *Id.* And the standard tightens with time: "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

*Clark v. Martinez* settled that this construction applies with equal force to noncitizens detained as inadmissible — including arriving aliens such as Petitioner. 543 U.S. 371, 378, 386–87 (2005). The statute's "operative language" applies "without differentiation" to all three categories of detainee it covers, and it cannot bear one meaning for admitted aliens and another for inadmissible ones. *Id.* at 378.

The Ninth Circuit has applied the framework accordingly. Where the record shows that the designated country will not accept the detainee, detention under § 1231(a)(6) must end. *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1114–15 (9th Cir. 2001). *Zadvydas* is concerned precisely with detention that continues after removal has become "no longer practically attainable." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (quotation omitted). And the general immigration detention statutes do not authorize prolonged detention absent the protections the Constitution requires. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1078–80 (9th Cir. 2006); *Diouf v. Napolitano*, 634 F.3d 1081, 1086 (9th Cir. 2011).

## II. ARGUMENT

### A. Section 1231(a)(6) Governs, and *Zadvydas* Applies to Petitioner in Full

Petitioner is subject to an administratively final order of removal, the removal period under 8 U.S.C. § 1231(a)(1) has expired, and his detention has since rested on § 1231(a)(6). Gasanov Decl. ¶¶ 11–12; Ex. B.

That Petitioner was charged as an arriving alien under INA § 212(a)(7)(A)(i)(I) makes no difference. *Clark v. Martinez* holds that § 1231(a)(6) carries the same implicit time limitation for inadmissible aliens that *Zadvydas* recognized for admitted ones. 543 U.S. at 378, 386–87. To the extent Respondents were to contend that Petitioner's detention rests instead on 8 U.S.C. § 1225(b), that provision likewise confers no authority to detain indefinitely. *Nadarajah*, 443 F.3d at 1078–80.

**B. The Presumptively Reasonable Six-Month Period Has Expired**

Petitioner's *in absentia* order of removal became administratively final upon its entry on February 12, 2026. 8 C.F.R. § 1241.1(e). The removal period commenced on that date, 8 U.S.C. § 1231(a)(1)(B)(i), and six months from it elapsed on or about August 12, 2026. Measured instead from the date ICE took Petitioner into physical custody — March 25, 2026 — six months have likewise now run. Gasanov Decl. ¶¶ 11–13. Under either measure the presumptively reasonable period is at an end, and the burden-shifting framework of *Zadvydas* applies.

**C. Petitioner Has Given Good Reason to Believe There Is No Significant Likelihood of Removal in the Reasonably Foreseeable Future**

Petitioner's initial burden is modest — he need not prove that removal is impossible, only supply "good reason to believe" that it is not significantly likely in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. The record here goes well past that threshold, and it does so with facts that are unusually concrete.

*First*, the designated country affirmatively refused. This is not a case of consular silence, delay, or bureaucratic backlog. On August 14, 2026, a Russian consular officer examined a group of eight of his nationals in ICE custody, identified Petitioner by hand, and refused him in a word. Gasanov Decl. ¶ 23. A sovereign's express refusal to document its own national is the strongest evidence a detainee can offer. Cf. *Kim Ho Ma*, 257 F.3d at 1114–15.

*Second*, an actual, scheduled removal failed for that reason. Petitioner was not merely told that removal might be difficult; ICE had set a removal date, August 15, 2026, and then could not carry it out. Respondents' own officers gave the reason: the travel documents did not exist. Gasanov Decl. ¶ 24. A removal that has already been attempted and has already failed is not a speculative prediction about the future. It is a completed fact about the present.

*Third*, the refusal was selective and therefore deliberate. Six of the eight Russian nationals presented to the consular officer were documented and removed on or about August 15, 2026. Petitioner and one other man were not. *Id.* ¶¶ 23–24. Whatever the Russian Federation's reasons, this was not administrative inertia that the passage of time might cure; it was an individualized determination as to Petitioner specifically, made by the only authority that can issue him a travel document.

*Fourth*, five weeks have passed and nothing has changed. No travel document has issued. No one has told Petitioner that one is expected. No new removal date has been set. *Id.* ¶ 26. The order of removal designates no alternate country, and Respondents have identified none. *Id.* ¶¶ 8, 30; Ex. B.

*Fifth*, the failure is in no way attributable to Petitioner. He has cooperated completely and remains willing to sign any form, complete any application, and attend any interview required of him. *Id.* ¶ 28.

**D. Respondents Cannot Carry Their Rebuttal Burden with Assertions of Continuing Effort or Speculation About a Third Country**

Once Petitioner makes his showing, Respondents "must furnish evidence sufficient to rebut" it. *Zadvydas*, 533 U.S. at 701. Generalized representations that ICE is "working on" a travel document, or that one is "anticipated," do not satisfy that burden; what is required is concrete evidence of actual progress — a pending and responsive diplomatic communication, an indication of willingness from the receiving state, a date. A bare assertion that efforts continue is precisely what *Zadvydas* forecloses, because it would permit detention to renew itself indefinitely on the Government's own say-so.

Nor can Respondents defeat the petition by invoking the theoretical possibility of removal to some unnamed third country. The removal order designates no alternate country. Ex. B; Gasanov Decl. ¶ 8. If Respondents intend to rely on a third-

country option, they must say which country, and they must show that it will take him; otherwise the possibility is exactly the kind of speculation the six-month framework exists to discipline. And the longer the detention runs, the less speculation the Court may credit: "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701.

Petitioner further requests that, in connection with any return to the writ, Respondents be directed to produce their records of the efforts actually made to obtain a travel document for him — including the date and content of every request to the Russian Federation, the response to each, the record of the August 14, 2026 consular interview, and the record of the cancelled August 15, 2026 removal. Those records are exclusively in Respondents' possession, and they are the only way the rebuttal showing can be tested. Gasanov Decl. ¶¶ 30–31.

**E. Section 1231(a)(1)(C) Has No Application**

Detention may be extended under 8 U.S.C. § 1231(a)(1)(C) where the noncitizen acts to prevent his own removal, and a detainee who refuses to cooperate cannot invoke *Zadvydas* because he "holds the keys to his freedom." *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003); see also *Lema v. INS*, 341 F.3d 853, 856–57 (9th Cir. 2003). Petitioner is the opposite case. He has never resisted an officer, a transport, or the removal process; he boarded the aircraft on August 8, 2026 without incident; he appeared before the Russian consular officer on August 14, 2026; and he was present and available for removal on August 15, 2026. Gasanov Decl. ¶ 28. The obstacle is the Russian Federation's refusal, which is not a key Petitioner holds.

**F. Continued Detention Independently Violates the Due Process Clause**

Freedom from physical restraint "lies at the heart of the liberty" the Due Process Clause protects, and civil detention is permissible only where it bears "a reasonable relation to the purpose for which the individual [was] committed."

*Zadvydas*, 533 U.S. at 690 (quoting *Jackson*, 406 U.S. at 738); accord *Foucha*, 504 U.S. at 79–80. The purpose of § 1231 detention is to secure the noncitizen's presence for removal. Where removal cannot occur, that purpose cannot be served, and the detention becomes an end in itself.

The remaining interests the Government might assert — danger and flight — are absent. ICE reduced his classification from "High" to "Low"; he has no disciplinary record across six months of custody; and his wife and two adopted children live in the United States. Gasanov Decl. ¶¶ 18–19, 29. Whatever residual interest Respondents may claim can be fully served by conditions of supervision under 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5, including reporting requirements and electronic monitoring, to all of which Petitioner consents.

## III. CONCLUSION

Respondents scheduled Petitioner's removal, attempted it, and could not carry it out because the Russian Federation refused to document him. Five weeks later, nothing has changed, and Respondents offer no date, no country, and no document. On this record, 8 U.S.C. § 1231(a)(6) no longer authorizes Petitioner's detention, and the Fifth Amendment forbids it.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter;

2. Issue an order to show cause under 28 U.S.C. § 2243 directing Respondents to show cause, within three days or such further time as the Court allows for good cause, why the writ should not be granted, and directing Respondents to file with their return the records of all efforts made to obtain a travel document for Petitioner, including all communications with the Government of the Russian Federation, the record of the August 14, 2026 consular interview, and the record of the cancelled removal of August 15, 2026;

3. Declare that Petitioner's continued detention is not authorized by 8 U.S.C. § 1231(a)(6) and violates the Due Process Clause of the Fifth Amendment;

4. Grant the writ of habeas corpus and order Petitioner's immediate release from custody under reasonable conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5;

5. Award costs and, if Petitioner prevails, attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

6. Grant such other and further relief as the Court deems just and proper.

**VERIFICATION**

This Petition is verified on Petitioner's behalf pursuant to 28 U.S.C. § 2242 by the concurrently filed Declaration of Magomed Gusein Gasanov, executed under penalty of perjury.

Date: September 20, 2026

Respectfully Submitted,

/s/ Magomed Gusein Gasanov
Magomed Gusein Gasanov, Esq. (CA SBN: 368130)
137 S Crescent Dr, Apt. 3
Beverly Hills, CA 90212
gasanov.mgz@gmail.com
213-642-9978

*Attorney for Petitioner*
*DOK ZAINUTDINOV*